Gyulai, Appellant, *v.* Metropolitan Life Insurance Company.

Argued October 14, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Edwin A. J. Blank,* for appellant.

*Owen B. Rhoads,* with him *John Bishop, Dechert, Smith & Clark* and *Harry Cole Bates,* for appellee.

OPINION BY CUNNINGHAM, J., March 16, 1939:

This appeal may be considered as a companion to the preceding case at No. 215 October Term, 1938, of this court. The plaintiff in that case is also plaintiff here; she there sued to recover from the Prudential Insurance Company of America the "Accidental Death Benefit" provided for in a contract of insurance upon the life of her husband, Vincent July, who died October 5, 1936, under the circumstances detailed in our opinion at 135 Pa. Superior Ct. 73, 4 A. 2d 824.

The suit out of which this appeal arose was for similar benefits which the Metropolitan Life Insurance Company agreed to pay, under certain specified conditions, in each of two policies issued by it on the life of her husband. Both cases were tried in February, 1938, —the former before a judge of the municipal court, sitting without a jury, and the present one before a judge and jury in Common Pleas No. 1. The trial in the municipal court resulted in a judgment in favor of the plaintiff, which we have affirmed. An opposite result was arrived at in the common pleas. The defendant company offered no testimony, but at the conclusion of the plaintiff's case submitted points for binding instructions which were affirmed by the trial judge and a verdict for the defendant directed. The appeal now before us is by the plaintiff from the judgment entered on that verdict.

The only aspect in which the case now at bar differs from this appellant's case against the Prudential Insurance Company, from a legal standpoint, is that the provisions of the policies here involved relative to the payment of accidental death benefits are more specific than the similar provision in that case. The applicable

portions of the "Accidental Death Benefit" provision with which we are here concerned read:

"Upon receipt of due proof that the insured ...... has sustained, after the date of the issue of this policy, bodily injuries, solely through external, violent and accidental means, resulting, directly and independently of all other causes, in the death of the insured, ...... the company will pay ...... an accidental death benefit ......

"No accidental death benefit will be paid if the death of the insured ...... is caused or contributed to, directly or indirectly, or wholly or partially, by disease, or by bodily or mental infirmity ......"

In this connection is may be noted that these policies, unlike those of some insurance companies, do not contain any specification of "surgical operations or medical treatments" as a direct or contributory cause of death which will defeat recovery.

The substantial defense interposed to appellant's statement of claim was thus stated in the company's affidavit: "Defendant avers that insured died from natural causes; that his death was not due solely to external violent and accidental means, but was caused by or contributed to, wholly or partly, by disease or by bodily infirmity."

The circumstances under which the death of the insured occurred may be thus summarized: While at work on September 25, 1936, he was struck on the head by a falling board. Upon his arrival at a hospital, the wound was treated, two sutures were inserted, and he was given an anti-tetanus injection. He returned to work and stayed until the end of the day. At home that evening he experienced hemorrhages from his mouth and nose and was again taken to the hospital He went home the following day, but entered another hospital where he died ten days after the injury. The cause of death was determined by the coroner's physician, who made an autopsy, to be acute nephritis, kid-

ney ailment. This illness was attributed to an unusual sensitivity, described as an "anaphylactic reaction," to the anti-tetanus serum. It was not connected directly with the wound on the head of the decedent.

The testimony by and on behalf of the appellant in this case was, with one exception, substantially the same as that quoted by us at some length in the Prudential case. During the direct examination of Dr. Martin P. Crane, the coroner's physician, the trial judge took the witness out of the hands of appellant's counsel and, in our opinion, improperly prevented him from testifying that the injection of the tetanus antitoxin was regarded by the medical profession as a necessary or proper part of the treatment indicated by the circumstances under which the insured was admitted to the hospital.

This portion of the record reads: "By Mr. Blank (counsel for appellant): Q. Dr. Crane, was it proper and necessary for this antitoxin serum to be included for an injury of this kind? Mr. Rhoads (counsel for the company): Objected to. The Court: Objection sustained. This is only the doctor's opinion. He doesn't know that it is so. In casting about for a reason, and not being able to find any other, you lit upon this antitoxin; isn't that it, as the only thing to which you could ascribe this kidney condition? The Witness: Well, your Honor, in view of the man's history, I think—The Court: I don't mean that you didn't have any other reasons, but this was the precipitating cause, you think? The Witness: Yes. Q. You don't get acute nephritis from such a small cut on the scalp as he had? A. No. Q. That couldn't give it to him? A. It would certainly be very, very remote. Q. In this case you don't think that had anything to do with it? A. I don't believe it did. Q. Was it your idea, Doctor, he had some sort of idiosyncrasy to this kind of antitoxin? A. That's it, your Honor. Q. What is the word they use, allergic? A. Anaphylactic. By Mr. Rhoads: Q. Doctor, was this

sensitivity or idiosyncrasy, you believe, that set up this reaction? A. That's right. Q. You say the actual cause of death was acute nephritis or kidney disease, complete renal shutdown? A. That's right."

The case was tried for appellant upon the theory that through external, violent and accidental means the insured received a cut on his head which started a chain of events, in which the injection of the tetanus antitoxin, the unsuspected hyper-sensitivity of the insured to the serum, and the resulting fatal nephritis, were the links which would justify a conclusion that the injury to the head caused the death of the insured, within the meaning of the contract.

Appellant had a right to show, by any competent testimony, that, in the language of Mr. Justice MAXEY in *Neely et al. v. The Provident Life and Accident Insurance Co.*, 322 Pa. 417, 185 A. 784, "the treatment was invited by the trauma." Dr. Crane was competent to express an opinion upon that subject and should have been permitted to do so.

The first point submitted in behalf of the company reads:

"1. Plaintiff has the burden of proving, by competent evidence, (a) that the insured's death was caused by external, violent and accidental means, and (b) that it resulted solely from such means, i. e. was not 'caused, or contributed to, directly or indirectly, or wholly or partially, by disease, or by bodily or mental infirmity.' "

Concededly, this point was properly affirmed. By the first assignment, however, it is charged that the trial judge erred in affirming the company's second point reading:

"2. Since, from the evidence introduced by plaintiff, it appears that insured's death did not result directly and independently of all other causes from the bodily injuries suffered on September 25, 1936, your verdict must be for defendant in no sum of money."

The affirmance was upon the theory that appellant

was not entitled to go to the jury because the testimony in her behalf showed affirmatively that her husband had a bodily infirmity—a hyper-sensitivity to anti-tetanus serum—which was the immediate cause of his death. Compare *Lederer v. Metropolitan Life Ins. Co.*, 135 Pa. Superior Ct. 61, 4 A. 2d 608, in which there could be no question that the ailments with which the insured was afflicted were "bodily infirmities."

In his opinion refusing a new trial, the presiding judge, after referring to the terms of the policy, said: "These terms cannot, in our opinion, be held to cover this case where the evidence will not support a finding that the cut on the head was even a contributing cause of death. The testimony linking the insured's kidney disease to the effects of the serum is little more than conjecture, but assuming that connection to be established, it is still clear that death resulted from an independent intervening agency, to wit, an intentional injection."

The error in this ruling is, as we view it, that the trial judge assumed, in the face of ample authority to the contrary, that the hyper-sensitivity of the insured to the anti-tetanus serum, was a "bodily infirmity," within the meaning of the insurance contract.

We have cited and considered at length in the preceding case the authorities which demonstrate that assumption to be unwarranted, and which distinguish the case at bar from *Hesse v. Traveler's Ins. Co.*, 299 Pa. 125, 149 A. 96, cited and relied upon by the court below.

Our conclusion is that appellant, under the evidence as it stood at the conclusion of her case, was entitled to go to the jury upon the questions whether the hyper-sensitivity of her husband to the surgical treatment occasioned by the accident was a bodily infirmity within the meaning of the policy, and even if so, whether the giving of the injection was an independent intervening agency, or merely a step in the sequence of events set in motion by the accident.

Judgment reversed with a venire.